Quinlan, Regina L., J.
INTRODUCTION
This action arises from a contract between plaintiff William Gosselin and Binna Adams for the purchase and sale of Adams’s property located at 9 Lummis Lane, West Falmouth, Massachusetts to plaintiff for the sum of $200,000. Adams’s appointed conservator, Jeffrey W. Oppenheim, brought an action in the Barn-stable Division of the Probate and Family Court Department (“Probate Court”) seeking rescission of said contract on the basis of Gosselin’s alleged undue influence, fraud, breach of contract, and unjust enrichment arising from the sale and purchase transaction with Adams. The Probate Court entered judgment in favor of Adams’s conservator and ordered Gosselin to convey his right, title, and interest in the property to the conservator in exchange for $160,000, Gosselin’s purchase price minus attorneys fees. Subsequently, Gosselin filed this action seeking to hold attorney Lawrence R. Glynn liable for breach of contract, misrepresentation, and negligence arising out of Glynn’s representation of Gosselin in the real estate transaction with Adams.
This matter is before the court on defendant Glynn’s Motion for Summary Judgment on plaintiff Gosselin’s claims. For the following reasons, the defendant’s Motion for Summary Judgment is ALLOWED.
BACKGROUND
The following facts are undisputed or are facts that this court accepts as true for purposes of this motion.
William Gosselin worked for many years as a landscaper for Adams and her deceased husband. When Adams’s nephew and devisee of Adams’s property located at 9 Lummis Lane, West Falmouth, Massachusetts passed away in August 2003, Gosselin and Adams entered into a purchase and sale agreement whereby Gosselin would pay Adams $200,000 for the premises. At the trial in the Probate Court initiated by Adams’s conservator to rescind the contract based on Gosselin’s undue influence over and misrepresentations to Adams, Gosselin testified that Adams dictated the terms of the purchase and sale agreement. The court, however, did not find Gosselin’s testimony credible. Rather, the court found based on Adams’s deposition that Gosselin proposed and effectuated the sale of the property as well as the $200,000 purchase price. The court found further that Gosselin made numerous intentional misrepresentations to Adams in order to induce her to enter into the transaction. Based on its findings that Gosselin exercised undue influence over Adams and that Adams lacked the mental ability to comprehend the terms and nature of the transaction, the Probate Court concluded that the conveyance of the property between Gosselin and Adams was voidable and entered judgment on January 19, 2007. The court ordered Gosselin to reconvey the property to Adams’s conservator in exchange for $160,000. Gosselin did not appeal the Probate Court’s decision.
Lawrence R. Glynn, Gosselin’s attorney for the real estate transaction with Adams, appeared as a witness at the trial in the Probate Court and testified as to Adams’s apparent understanding of the transaction with Gosselin. The court found that both Glynn and Adams’s counsel at the closing lacked any substantive basis or experience that could lead them to conclude Adams comprehended the nature of the transaction. The court did not address Glynn’s role in the transaction or the extent thereof, nor does its findings reflect allegations, particularly by Gosselin, against Glynn as to his participation in the transaction with Adams.
On November 21, 2007, Gosselin filed an action against Glynn in the Superior Court alleging breach of contract, misrepresentation based on Glynn’s alleged representations as to his experience and abilities upon which Gosselin relied to his detriment, negligent performance of services, and violation of G.L.c. 93A. On April 15, 2008, Glynn filed this Motion for Summary Judgment on all counts of Gosselin’s complaint.
*524 DISCUSSION
Standard of Review
Pursuant to Mass.R.Civ.P. 56, the court shall grant summary judgment where no genuine issue as to any material fact exists and where, viewing the record in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party bears the burden of demonstrating affirmatively that no genuine issue exists as to any central or material fact to the case and that the law mandates judgment for him. Id. The moving party may satisfy this burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or, if the party opposing summary judgment has the burden of proof at trial, by demonstrating that the party opposing the motion has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991), Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If the moving party sustains this initial burden, the burden shifts to the non-moving party to present affidavits or other evidentiary material that set forth specific facts that establish a genuine issue for trial. Pederson, 404 Mass. at 17. The non-moving party may not rely upon the allegations or denials in his pleadings to rebut a motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Analysis
The defendant seeks judgment on essentially two grounds, issue preclusion and the doctrine of in pari delicto. In support of his Motion for Summary Judgment, the defendant submitted a copy of the verified complaint filed in the Probate Court in the action brought by Adams’s conservator against Gosselin and copies of the Findings and Conclusions of Law and the Judgment of the Probate Court in that same action. In that proceeding, the Probate Court addressed the validity of the contract between Adams and Gosselin based upon the conservator’s allegations of Gosselin’s numerous misrepresentations and his undue influence over Adams that procured her assent to the terms of the purchase and sale agreement. The court concluded that Gosselin proposed and effectuated the transaction with Adams and that Gosselin’s misrepresentations as to his living situation, his need to reduce his commute to Falmouth, and his inability to pays taxes on his existing home induced Adams to enter into the transaction.
The doctrine of issue preclusion requires (1) a valid and final judgment on the merits in the prior adjudication; (2) that the party against whom estoppel is asserted was a party (or in privity with a parly) to the prior litigation; (3) that the issue in the prior adjudication is identical to the issue in the current litigation; and (4) that the issue in the prior adjudication was essential to the earlier judgment. Green v. Town of Brookline, 53 Mass.App.Ct. 120, 123 (2003). The first two elements are satisfied as the decision of the Probate Court was final and Gosselin, the defendant in the probate action, is the party against whom Glynn asserts the defense of issue preclusion in this matter. The issue in the Probate proceeding was whether Gosselin’s undue influence over Adams in procuring her assent to the purchase and sale contract would render it voidable.
The issue Gosselin now seeks to raise is the identity of the person who negotiated the terms of the contract that, in the end, voided the entire agreement. Gosselin had a “full and fair opportunity” to litigate the issue of identity and culpable behavior at the probate proceeding, yet despite the conservator’s numerous allegations of undue influence and misrepresentation on the part of Gosselin that several witnesses verified, not once did Gosselin suggest that his attorney, Glynn, was responsible for the contract terms or played a role in negotiations with Adams. See Martin v. Ring, 401 Mass. 59, 62 (1987). The Probate Court found that Gosselin, not Adams nor Glynn, proposed the sale and dictated its terms and therefore exercised undue influence over Adams. This finding of undue influence was essential to the court’s judgment rendering the purchase and sale agreement voidable. Based on the findings of the Probate Court with regards to the validity of the purchase and sale agreement for Adams’s premises, Gosselin is precluded from raising the issue of Glynn’s role in a subsequent action.
Even assuming Glynn played some role in the negotiations, the doctrine of in pari delicto bars any recovery from Glynn. This doctrine “bars a plaintiff who has participated in the wrongdoing from recovering damages for loss resulting from the wrongdoing.” Choquette v. Isacoff, 65 Mass.App.Ct. 1, 4 (2005). Essentially, Gosselin is attempting to hold Glynn partially or fully liable for the terms and negotiation of the failed purchase and sale contract with Adams and the resulting damage. The Probate Court found unequivocally that Gosselin’s actions, namely his misrepresentations and abuse of his relationship with Adams and Adams’s limited mental capacity, made the contract voidable. The Probate Court’s findings make clear that Gosselin at least participated in the wrongdoing. Gosselin cannot now seek to hold him liable when a court of competent jurisdiction has determined that Gosselin was at fault for the misrepresentations and undue influence that voided the contract. As such, the doctrine of in pari delicto bars Gosselin from seeking indemnity or contribution from Glynn for the same wrongdoing for which Gosselin was ultimately responsible. Choquette, 65 Mass.App.Ct. at 1, 4 (stating that the doctrine of in pari delicto is adequate grounds for summary judgment).
As the party moving for summary judgment, Glynn has met his burden of establishing that no genuine issue as to a material fact exists and that he is entitled *525 to judgment as a matter of law. Pederson, 404 Mass. at 16-17. Gosselin, however, has failed to demonstrate otherwise. He did not present the court with affidavits or other evidentiary material that set forth specific facts as to Glynn’s wrongdoing. Id. at 17. In his response to Glynn’s motion for summary judgment, Gosselin admitted to the Probate Court’s findings listed in Glynn’s statement of facts, but denied the truth of many of those findings and contested certain findings by raising points not raised at the Probate hearing. Gosselin cannot rely on his allegations in his complaint and opposition to the defendant’s motion for summary judgment as a basis for his attempt to hold Glynn liable for his alleged misrepresentation and negligence that resulted in the voidable purchase and sale agreement with Adams. LaLonde, 405 Mass. at 209-10. He has not presented admissible facts that show any conduct or acts on the part of Glynn that establish a genuine, triable issue. Id. Based on the summary judgment record, Glynn’s motion for summary judgment is allowed.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED.
By the court (Quinlan, J.)